IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CITIFINANCIAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:07CV055-WHA |
| | ) |
| BROOKA F. STOKES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF CITIFINANCIAL, INC.'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Plaintiff CitiFinancial, Inc. ("CitiFinancial" or "Plaintiff"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves this honorable Court for summary judgment on its Petition to Compel Arbitration. CitiFinancial is entitled to judgment as a matter of law on its Petition to Compel Defendant Brooka Stokes ("Stokes" or "Defendant") to arbitrate her claims against CitiFinancial and its employee. In support of this Motion, CitiFinancial submits the exhibits attached hereto, the supporting memorandum of law filed contemporaneously herewith, and further shows as follows:

I.  **STATEMENT OF UNDISPUTED MATERIAL FACTS.**

1.  This action is a Petition to Compel Arbitration, brought under Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. This Petition is necessary because Stokes has violated an agreement to arbitrate her claims against CitiFinancial and an employee by filing a lawsuit in state court styled *Brooka Stokes v. CitiFinancial, Inc. f/k/a Washington Mutual Finance and Glenda Duncan*, now pending in the Circuit Court of Lee County, Alabama,

Civil Action Number CV-06-761 (the "Underlying Action"). (A copy of the Complaint in the Underlying Action is attached hereto as Ex. A).

2. On March 10, 2003, Stokes entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC, a corporate affiliate of Plaintiff CitiFinancial, Inc. (*See* Disclosure Statement, Note and Security Agreement and Arbitration Agreement attached as Ex. 1 to Affidavit of Teresa M. Baer ("Baer Aff."), attached hereto as Ex. B.) In the arbitration agreement, Stokes agreed to arbitrate any claims against CitiFinancial Corporation, LLC, <u>as well as any claims against CitiFinancial Corporation, LLC's affiliates and their respective employees, including claims she may have regarding any past, present or future credit transaction</u>. (*See* Arbitration Agreement, attached hereto as Ex. 1 to Ex. B) (emphasis added).

3. The parties' Arbitration Agreement provides in relevant part:

### ARBITRATION AGREEMENT

**THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In consideration of Lender making the extension of credit in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:

"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.

**"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).**

**"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.**

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

\* \* \*

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted to the Rules for arbitration, any Claim, except those specified below in

1544321                                                          3

this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act . . . .

\* \* \*

**Claims Excluded from Arbitration.**  Neither you nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.

- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim.  Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00.  In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

\* \* \*

**Special Acknowledgments.  You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will no hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.**

**READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY.  IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.  BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS**

**AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

(*See* Arbitration Agreement, attached hereto as Ex. 1 to Ex. B) (underline and bolded emphasis added; bolded emphasis in original).

4. The parties' credit transaction unquestionably involved and/or affected interstate commerce such that the FAA governs. CitiFinancial Corporation, LLC is a Delaware limited liability company and is in the business of making consumer loans. (S*ee* Baer Aff., Ex. B.) All of CitiFinancial Corporation, LLC's loan operations necessarily involve interstate commerce. (*Id.*) For example, CitiFinancial Corporation, LLC funds its loans made in Alabama, including Stokes' loan, with capital sources from outside the State of Alabama. (*Id.*) When a CitiFinancial Corporation, LLC loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pennsylvania. (*Id.*) Further, when CitiFinancial Corporation, LLC makes a loan to a customer, including Alabama customers, the CitiFinancial Corporation, LLC employee processing the transaction inputs data into a nationwide computer system. (*Id.*) Moreover, the parties' financing transaction was extensively regulated by the federal government by virtue of its plenary powers under the Commerce Clause. For example, credit agreements such as the one at issue must comply with several federal laws and regulations, including the federal Truth-in-Lending Act and the FTC "holder in due course" rule. Because of the undisputed federal regulation of the parties' loan transaction, it necessarily follows that the contract "affects" interstate commerce so as to bring into play the FAA. Finally, the parties expressly agreed that the "funding for [the] Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ et seq." (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) Accordingly, there is no doubt that the transaction involved interstate commerce.

5. On November 16, 2006, Stokes filed the Underlying Action against CitiFinancial, Inc. f/k/a Washington Mutual Finance[1] and an employee, Glenda Duncan ("Duncan"), in the Circuit Court of Lee County, Alabama. (*See* Complaint, attached hereto as Ex. A.) Stokes' claims are based upon alleged injuries resulting from the alleged publication of and representation to the credit bureau of false and defamatory statements concerning Stokes. (*Id.*) Stokes also seeks damages based upon the alleged harassment of Stokes by way of telephone calls and correspondence concerning her loan with CitiFinancial. (*Id.*) Stokes sets forth claims of defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon the alleged misrepresentation, improper credit reporting and collection activities associated with Stokes' loan. (*Id.*) Based upon the foregoing claims, Stokes seeks an unlimited amount of compensatory and punitive damages, as well as attorney fees and costs.

6. The parties' Arbitration Agreement clearly covers the claims that Stokes asserts in the Underlying Action. Under the parties' Arbitration Agreement, Stokes agreed to arbitrate the claims she asserts, not only against CitiFinancial Corporation, LLC, but also against its "past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity)." (*See* Arbitration Agreement, attached hereto as Ex. 1 to Ex. B.) CitiFinancial, Inc. is a corporate affiliate of CitiFinancial Corporation, LLC and Duncan is one of its employees. (*See* Baer Aff., Ex. B.) Stokes' claims in the Underlying Action are based upon alleged misrepresentation, improper credit reporting and collection activities associated with a loan Stokes obtained from CitiFinancial - i.e., claims regarding "[a]ny act . . by . . . Us," "[f]raud or misrepresentation," as well as regarding "[a]ny dispute about . . . collecting, or

---

[1] CitiFinancial, Inc. is the successor by merger to Washington Mutual Finance, LLC.

enforcing a Credit Transaction" -- which are specifically encompassed by the parties' arbitration agreement. Accordingly, there is no doubt that the claims Stokes asserts in the Underlying Action are encompassed in the scope of the March 10, 2003 arbitration agreement.

    **II.**    **CITIFINANCIAL IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON ITS PETITION TO COMPEL ARBITRATION OF STOKES' CLAIMS.**

    1.    CitiFinancial is entitled to summary judgment because there is no genuine issue as to any material fact.

    2.    The instant action is authorized by Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*. Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending.

    3.    This Court has diversity jurisdiction over this case, as CitiFinancial, Inc. is a Maryland corporation with its principal place of business also located in the State of Maryland and Brooka Stokes is a resident citizen of the State of Alabama.

    4.    In addition, the amount in controversy is over $75,000, exclusive of interest and costs. The amount in controversy in a petition to compel arbitration is determined by reference to the amount at issue in the Underlying Action on the claims subject to arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983). Stokes seeks an unlimited amount of compensatory and punitive damages in the Underlying Action. As such, there is no doubt that this Court has jurisdiction over this action.

    5.    Arbitration agreements are presumptively valid under federal law.

    6.    All of the prerequisites under the FAA for enforcement of an arbitration agreement are satisfied in this matter because (1) there is a valid written agreement to arbitrate;

(2) the transaction clearly involves interstate commerce; and (3) the scope of the arbitration agreement encompasses Stokes' claims asserted in the Underlying Action.

       7.     The FAA mandates a stay of the Underlying Action pending the arbitration of Stokes' claims.

**WHEREFORE**, CitiFinancial respectfully requests that the Court grant this Motion and enter an Order compelling arbitration of Stokes' claims in the Underlying Action against both CitiFinancial and its employee, in accordance with the parties' arbitration agreement. CitiFinancial further requests that, pursuant to Section 3 of the FAA, 28 U.S.C. § 2283 and 28 U.S.C. § 1651(a), the Court enter an Order (1) enjoining Stokes from prosecuting all claims in the Underlying Action to protect and effectuate this Court's judgment and (2) staying all litigation of the Underlying Action pending the arbitration of Stokes' claims.

       Dated this the 16th day of February, 2007.

                              Respectfully submitted,

                              s/ Alan D. Leeth
                              Reid S. Manley(MAN039)
                              Alan D. Leeth (LEE038)

                              Attorneys for Plaintiff
                              CITIFINANCIAL, INC.

**OF COUNSEL:**

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

**CERTIFICATE OF SERVICE**

      I hereby certify that on the <u>16th</u> day of <u>February, 2007</u>, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all properly registered parties and to the extent they are not registered with the Court's ECF system, they have been served by directing same to their office addresses via first-class, United States mail, postage prepaid:

Hon. James T. Gullage
Jeffrey G. Tickal
GULLAGE & TICKAL, LLP
511 Geneva Street
Opelika, AL 36801
Tel.: (334) 737-3733

                                        <u>s/ Alan D. Leeth</u>
                                        OF COUNSEL

IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

BROOKA STOKES )
)
Plaintiff, )
)
vs. ) CV 2006-741
)
CITIFINANCIAL a/k/a )
WASHINGTON MUTUAL FINANCE; )
GLENDA DUNCAN; and A, B, C, and/or D )
being those persons, firms, corporations, )
partnerships, or other entities responsible for )
failure to satisfy the debt upon payment by )
the Plaintiff; E, F, and/or G and those persons, )
firms, corporations, partnerships, or other )
entities responsible for notifying any and all )
Credit Bureaus of the existence of the debt )
which had been paid; G, H, and/or I and those )
parties responsible for the acts complained of )
herein, whose identities are otherwise unknown, )
but who will be added by amendment when )
ascertained, )
)
Defendants. )

FILED
NOV 16 2006
IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

## COMPLAINT

Before September 27, 2004, the Plaintiff borrowed a sum of money from the Defendant Prior to said date of September 27, 2004, the Plaintiff, Brooka Stokes, paid back all sums borrowed from the Defendant and owed them no debt. On or about September 27, 2004, the Defendant, Citifinancial a/k/a Washington Mutual Finance, filed a suit in the District Court of Lee County, Alabama, Small Claims Division, Case No. SM-04-1513 alleging that Brooka Stokes owed to the Defendant, Citifinancial, a/k/a Washington Mutual Finance, the sum of $936.74. Brooka Stokes entered an appearance in the case denying the debt and alleging that the debt had been paid. Nevertheless, the case was set for trial on November 18, 2004 in the Small Claims Court of Lee County, Alabama. At the trial on the matter, Citifinancial, a/k/a Washington Mutual Finance was represented by an employee of Citifinancial. At the trial of the matter, the payment of the debt by Mrs. Stokes was proved to the Court and the Court entered judgment for Brooka Stokes for $350 on her counterclaim. The decision of the Court


EXHIBIT A

was entered in open Court and the employee of the Defendant was told of the fact that judgment was entered for Brooka Stokes and against the Defendant, Citifinancial, a/k/a Washington Mutual Finance. The said Citifinancial, a/k/a Washington Mutual Finance was notified in open court of the fact that judgment was rendered against it as previously alleged. The representative of Citifinancial, a/k/a Washington Mutual Finance is believed to be Glenda Duncan or a manager of Citifinancial, a/k/a Washington Mutual Finance. The pleadings in the case were signed by a person believed to be Glenda Duncan. Citifinancial, a/k/a Washington Mutual Finance did not appeal the judgment.

In spite of the rendering of the judgment in favor of Brooka Stokes and against Citifinancial, a/k/a Washington Mutual Finance, Citifinancial, a/k/a Washington Mutual Finance takes the position that the debt was and is still owed and that the burden is upon Brooka Stokes to show that she had paid the debt although the evidence was introduced at the time of the trial showing the debt had been paid.

After the date of November 18, 2004, said Citifinancial, a/k/a Washington Mutual Finance, continued to harass Brooka Stokes by letters and by telephone calls without regard to the fact that the case had been terminated by a judgment in favor of Brooka Stokes.

During the summer of 2006, Brooka Stokes learned that Citifinancial, a/k/a Washington Mutual Finance had reported to the Credit Bureau that Brooka Stokes still owed the debt, that she had "skipped" the payment of the debt. The allegation to the Credit Bureau has caused Mrs. Stokes difficulty in obtaining loans and the constant telephone calling and letters have caused her grievous mental pain and suffering. Her credit rating has been lessened and it is difficult to obtain a required loan and other business relationships.

## COUNT ONE

The Plaintiff adopts and re-alleges the language above in Paragraph One of the Complaint. On or after November 18, 2004, the Defendants slandered the Plaintiff by publishing a false and defamatory statement of and concerning the Plaintiff, that is, that Mrs. Stokes had not paid the debt to Citifinancial, a/k/a Washington Mutual Finance, and in fact had "skipped". The Defendants have not paid the judgment against them.

. The Plaintiff was damaged by such false and defamatory statements as follows: She suffered grievous mental and physical suffering, and in addition she found it difficult to borrow money because of the false allegations made by the Defendant.

. The Plaintiff claims punitive damages of the Defendants because Defendant published said statement with malice and with knowledge of its falsity or with gross and reckless disregard of its falsity.

THEREFORE, Mrs. Brooka Stokes, the Plaintiff, demands judgment against the Defendants in a sum to be assessed by a jury.

## COUNT TWO

The Plaintiff re-alleges the facts set forth above and incorporates them into this Count and adds thereto:

The Defendant, Citifinancial, a/k/a Washington Mutual Finance's representation to the credit bureau and to Mrs. Stokes were false and the said Defendants without knowledge of the true facts grossly misrepresented the facts intending the Plaintiff, Brooka Stokes to be coerced into paying a debt she did not owe and notified other potential lenders that Mrs. Stokes did not pay her debts and in fact "skipped".

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff, Mrs. Brooka Stokes, demands both compensatory and punitive damages from the Defendants.

## COUNT THREE

The Plaintiff, Brooka Stokes, readopts the facts set forth above and incorporates them in this Count and adds thereto:

The misrepresented facts were false and made by the Defendants by mistake but with the intention that the Plaintiff should rely on them. As a proximate result of the fraud, the Plaintiff was caused to suffer injuries and damages as her credit was damaged and she was harassed by the Defendants, had difficulty in securing a loan, and was otherwise injured both physically and mentally. The Plaintiff, Brooka Stokes, demands punitive damages of the Defendants because of the intentional gross and reckless nature of the fraud.

## COUNT FOUR

The Plaintiff, Brooka Stokes, readopts the facts set forth above and incorporates them in this Count and adds thereto:

Said representations were false and Defendants knew they were false; or were false and Defendants, without knowledge of the true facts, recklessly misrepresented the facts; or were false and were made by the Defendant by mistake but with the intention that the Plaintiff should rely on them. Plaintiff claims compensatory and punitive damages of the Defendants because of the intentional or gross and reckless nature of the fraud.

WHEREFORE, Plaintiff demands judgment against the Defendants in a sum to be adjudged by a jury.

## COUNT FIVE

The Plaintiff, Brooka Stokes, readopts the facts set forth above and incorporates them in this Count and adds thereto:

The Defendants intentionally inflicted mental harm and pain on the Plaintiff, Brooka Stokes by harassing her with telephone calls and numerous letters and recording a paid debt as still being due and alleging that Mrs. Stokes "skipped". Brooka Stokes was caused to spend and will spend sums of money for attorney fees and litigation expenses for which she claims the same from the Defendants.

## JURY DEMAND

The Plaintiff, BROOKA STOKES, demands trial by struck jury of all issues in this case.

Respectfully submitted this _16_ day of _Nov_, 2006.

_____
JAMES T. GULLAGE (GUL002)
Attorney for the Plaintiff
Gullage & Tickal, LLP
511 Geneva Street
Opelika, AL 36801
334-737-3733
334-737-3766 fax

## AFFIDAVIT OF TERESA M. BAER

**CITY OF BALTIMORE** )

**STATE OF MARYLAND** )

    **PERSONALLY APPEARED** before the undersigned officer, duly authorized to administer oaths, **TERESA M. BAER**, who states under oath as follows:

    1.    I am over the age of nineteen years, and I am competent to testify to the matters set forth herein. I am employed by CitiFinancial, Inc. as Licensing/Corporate Records Manager. I have personal knowledge of the facts set forth in this affidavit, and all such facts are true to the best of my knowledge.

    2.    I am familiar with the operations of CitiFinancial Corporation, LLC, and I am authorized by CitiFinancial Corporation, LLC to execute documents on its behalf.

    3.    CitiFinancial, Inc. is a corporate affiliate of CitiFinancial Corporation, LLC and Glenda Duncan is employed by CitiFinancial Corporation, LLC.

    4.    CitiFinancial Corporation, LLC is a Delaware limited liability company. CitiFinancial Corporation, LLC is in the business of making consumer loans, and all of its loan operations necessarily involve interstate commerce. CitiFinancial Corporation, LLC funds its loans made in Alabama, including Stokes' loan, with capital sources from outside the State of Alabama. When a CitiFinancial Corporation, LLC loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pennsylvania. Further, when CitiFinancial Corporation, LLC makes a loan to a customer, including Alabama customers, the CitiFinancial Corporation, LLC employee processing the transaction inputs data into a nationwide computer system.



EXHIBIT B

5. CitiFinancial Corporation, LLC keeps true and correct copies of the loan agreements entered into between CitiFinancial Corporation, LLC, on the one hand, and borrowers, on the other hand. According to the business records of CitiFinancial Corporation LLC, Brooka Stokes closed a loan with CitiFinancial Corporation, LLC on March 10, 2003. Attached to this declaration as Exhibit "1" is a true and correct copy of the Disclosure Statement, Note and Security Agreement and Arbitration Agreement, executed in relation to the March 10, 2003 loan. These documents were prepared, signed, and are maintained in the regular course of the business of CitiFinancial Corporation, LLC, and it is and was the regular practice of CitiFinancial Corporation, LLC to prepare, have signed, and maintain such documents.

**FURTHER AFFIANT SAYETH NOT.**

DATED: 2/15/04

_____
TERESA M. BAER

I, Karen Horner, a Notary Public in and for said City in said State, hereby certify that Teresa M. Baer, whose name is signed to the foregoing AFFIDAVIT OF TERESA M. BAER, and who is known to me, acknowledged before me on this day that, being informed of the contents of such instrument, she executed the same voluntarily on the day the same bears date.

Given under my hand and seal, this 15th day of February, 2007.

_____
NOTARY PUBLIC

[SEAL]

My Commission Expires: 5/21/07

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| BROOKA FERN STOKES<br>3301 OAKDALE DR<br>OPELIKA AL 36801 | CITIFINANCIAL CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 | Date of Loan<br>03/10/2003 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 15.03 % | $ 21,482.97 | $ 15,215.99 | $ 36,698.96 |

Payment Schedule:

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 30 | $ 249.55 | MONTHLY BEGINNING 04/14/2003 |
| 151 | $ 193.46 | MONTHLY BEGINNING 10/14/2005 |
| | $ | Paid in Full |
| | $ | 7-9-04 |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Security: If checked, Borrower has a security interest in:
☐ Motor Vehicle   ☐ Mobile Home
☒ Real Property   ☐ Other:

Late Charge: If a payment is in default 10 days or more after the scheduled payment date, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, but in no event to exceed $ 100.00.

Prepayment: If Borrower pays off early, Borrower will not have to pay a penalty and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

Additional Information:

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL AMOUNT | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 249.55 | $ 15,520.31 | $ 304.32 | 03/14/2003 |

Required Insurance Disclosure:
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

Optional Insurance Disclosure:
Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |
|---|---|---|
| $NONE | $ | |
| $NONE | $ | |
| $NONE | $ | |

_Brooka Fern Stokes_     3/10/03
First Borrower's Signature         Date

_____    ____
Second Borrower's Signature        Date

(* First year's premiums are calculated on the assumption that monthly loan payments are timely made). Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

Termination of Insurance:
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

TERMS: In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

PROMISE TO PAY: In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of 17.99 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the 30 month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease to 12.23% per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and is in addition to interest calculated at the above Rate(s) of Interest. Any Points are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points will not be refundable to Borrower.

(Intentionally left blank)

CitiFinancial Corporation, LLC
AL 25738-17  2/2003

Original (Branch)    Copy (Customer)

Borrower's Initials: _BFS_

Page 1 of 3

EXHIBIT 1

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

PREPAYMENT: Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

SECURITY AGREEMENT:

   A. To protect Lender if Borrower defaults on this loan, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

     1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |

     2. Other Property:

   B. If this line is completed, the loan is secured by either a Deed of Trust or a Mortgage on real property located at
3301 OAKDALE DR                    OPELIKA AL 36801                          See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

INSURANCE: If the original amount of the loan is $300.00 or more, not including insurance charges, and if the Property includes a motor vehicle or a mobile home worth $300.00 or more, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

FINANCING STATEMENTS: Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

LATE CHARGE: Borrower understands that there is a charge for late payments as shown in the Disclosure Statement on page 1 of this Disclosure Statement, Note and Security Agreement.

NSF CHECKS: Lender may charge the greater of either a $ 20.00 fee or an amount equal to the actual charge by the depository institution if a check, draft, negotiable order of withdrawal or like instrument is not paid or is dishonored.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of the Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust or the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance and any accrued interest at once. If the debt is referred for collection to an attorney who is not Lender's employee, and the original amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default, and court costs.

EFFECTS OF DEFAULT: If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale, minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the costs of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; and the costs of removing any superior liens or claims on the Property. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

CitiFinancial Corporation, LLC                                                                                Borrower's Initials: _BFS_
AL 25738-17  2/2003                        Original(Branch)        Copy (Customer)                                    Page 2 of 3

BROOKA FERN STOKES                                                                                                                03/10/2003

If the proceeds of sale are not sufficient to ● y the unpaid balance, earned interest, and ex ● s, subject to applicable Alabama law, Borrower agrees to pay the remaining amount upon demand.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

**LAW THAT APPLIES:** Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Lender may waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed and Arbitration Agreement is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

---

**ARBITRATION.** Borrower, Non-Obligor(s) (if any) and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this Disclosure Statement, Note and Security Agreement by this reference.

---

The following notice applies only if this box is checked. ☐

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed and Arbitration Agreement, and authorizes the disbursements stated therein.

**CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

WITNESSES: _Dana R. McCreight_

SIGNED: _Brooka Fern Stokes_ (Seal)
BROOKA FERN STOKES                    -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

CITIFINANCIAL CORPORATION, LLC

By: _Renee Booth, AM_
(Name and Title)        03/10/2003 17:12:10

**SECURITY INTEREST OF NONOBLIGOR:** Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____      _____ (Seal) _____
Signature                      Date          Signature                      Date

# ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

| BORROWER(S) | LENDER |
|---|---|
| BROOKA FERN STOKES<br><br>3301 OAKDALE DR<br>OPELIKA AL 36801 | CITIFINANCIAL<br>CORPORATION, LLC<br>3909-B PEPPERELL PARKWAY<br>OPELIKA AL 36801 |
| Date of Note    03/10/2003 | Account Number |

In consideration of Lender making the extension of credit described in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:

"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.

"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).

"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Agreement, unless We and You both agree in writing to forgo arbitration. The terms of this Agreement shall control over any inconsistency between the Rules of the Administrator and this Agreement. The party initiating the arbitration must choose one of the three following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| | | |
|---|---|---|
| JAMS<br>1920 Main Street, Suite 300<br>Irvine, CA 92610<br>www.jamsadr.com | American Arbitration Association<br>335 Madison Avenue, Floor 10<br>New York, NY 10017-4605<br>www.adr.org | National Arbitration Forum<br>P.O. Box 50191<br>Minneapolis, MN 55405<br>www.arbitration-forum.com |

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site. We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

**Claims Excluded from Arbitration.** Neither You nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim

**Additional Terms.**

<u>Administration of Arbitration.</u> Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Agreement pursuant to its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.

<u>Place of Arbitration.</u> The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

<u>Appeal.</u> Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.

<u>No Class Actions/No Joinder of Parties.</u> You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Agreement.

<u>Depositions.</u> After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Borrower's Initials: _BJS,_ _____

Costs. Unless the Rules of the Administr●●equire allocation more beneficial to You, the ●●●f any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part. Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of the Note.

Governing Law. This Agreement is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

Interpretation. Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Agreement under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations. The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.

Severability. If the arbitrator or any court determines that one or more terms of this Agreement or the Rules are unenforceable, or would make this Agreement unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Agreement, but such determination shall not impair or affect the enforceability of the other terms of this Agreement or the Rules.

Survival. This Agreement applies even if the Note has been paid in full, charged off by us, or discharged in bankruptcy.

Special Acknowledgments. You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will not hear or decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.

READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.

The Arbitration Agreement is executed as of the "Date of Note" written above.

_Brooka Fern Stokes_    Borrower
BROOKA FERN STOKES

_____    Borrower
By: _Renee Booth, AM_
(Lender Name and Title)

_____
Non-Obligor