IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CITIFINANCIAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:07CV055-WHA |
| | ) |
| BROOKA F. STOKES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF CITIFINANCIAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Plaintiff CitiFinancial, Inc. ("CitiFinancial" or "Plaintiff"), by and through its undersigned counsel, and hereby submits this Memorandum of Law in Support of Its Motion for Summary Judgment on its First Amended Petition to Compel Arbitration. For the reasons set forth below, CitiFinancial is entitled to judgment as a matter of law on its First Amended Petition to Compel Defendant Brooka Stokes ("Stokes" or "Defendant") to arbitrate her claims against CitiFinancial.

**I.      INTRODUCTION AND RELEVANT FACTS**

This action is a petition to compel arbitration, brought under Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Section 4 of the FAA provides a mechanism by which federal district courts are empowered to enforce agreements to arbitrate, regardless of where the lawsuit between the parties is pending. In this action, CitiFinancial seeks an Order compelling Stokes to submit to binding arbitration any and all claims she may have against CitiFinancial, pursuant to the parties' arbitration agreement. This Petition is necessary because Stokes has violated an agreement to arbitrate her claims against CitiFinancial by filing a

1548353

lawsuit in state court styled *Brooka Stokes v. CitiFinancial, Inc. a/k/a Washington Mutual Finance*[1] *and Glenda Duncan*, now pending in the Circuit Court of Lee County, Alabama, Civil Action Number CV-06-761 (the "Underlying Action"). (A copy of the Complaint in the Underlying Action is attached to CitiFinancial's Motion for Summary Judgment as Ex. A).[2]

On March 10, 2003, Stokes entered into a loan transaction and arbitration agreement with CitiFinancial Corporation, LLC, which at that time was and today still is a corporate affiliate of Plaintiff CitiFinancial, Inc. (*See* Disclosure Statement, Note and Security Agreement and Arbitration Agreement attached as Ex. 1 to Affidavit of Teresa M. Baer ("Baer Aff."), attached as Ex. B.) In the arbitration agreement, Stokes agreed to arbitrate any claims against CitiFinancial Corporation, LLC, <u>as well as any claims against CitiFinancial Corporation, LLC's past, present or future affiliates including claims she may have regarding any credit transaction</u>. (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) The parties' Arbitration Agreement provides in relevant part:

### ARBITRATION AGREEMENT

**THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS AND ENTITIES ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION**

---

[1] CitiFinancial, Inc. is the successor by merger to Washington Mutual Finance, LLC. (*See* Baer Aff., Ex. B.)

[2] All referenced exhibits are attached to CitiFinancial's contemporaneously filed Motion for Summary Judgment.

**PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In consideration of Lender making the extension of credit in the instrument evidencing your loan ("Note") and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Agreement.  If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Agreement.**  As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:

"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute the Note, and their heirs, survivors, assigns, and representatives.

**"We" or "Us" or "Our" means the Lender under the Note listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).**

**"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.**

"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us.  A Claim includes, without limitation, anything related to:

- The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;

- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

\* \* \*

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted to the Rules for arbitration, any Claim, except those specified below in this Agreement, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act . . . .

\* \* \*

**Claims Excluded from Arbitration.** Neither you nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.

- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claim brought in and subject to the jurisdiction of a small claims court, so long as such matter remains in such court and advances only an individual, non-class Claim. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

\* \* \*

**Special Acknowledgments.** You understand and acknowledge by signing Your name to this Agreement that (i) a court and/or jury will no hear or

>    **decide any Claim governed by this Agreement, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.**
>
>    **READ THE ABOVE ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION. BY SIGNING BELOW, YOU AGREE TO THE TERMS CONTAINED IN THIS AGREEMENT AND ACKNOWLEDGE THAT THIS DOCUMENT DID NOT CONTAIN ANY BLANK SPACES WHEN YOU SIGNED IT.**

(*See* Arbitration Agreement, attached as Ex. 1 to Ex. B) (underline and bolded emphasis added; bolded emphasis in original).

The parties' credit transaction unquestionably involved and/or affected interstate commerce such that the FAA governs. CitiFinancial Corporation, LLC is a Delaware limited liability company and is in the business of making consumer loans. (S*ee* Baer Aff., Ex. B.) All of CitiFinancial Corporation, LLC's loan operations necessarily involve interstate commerce. (*Id.*) For example, CitiFinancial Corporation, LLC funds its loans made in Alabama, including Stokes' loan, with capital sources from outside the State of Alabama. (*Id.*) When a CitiFinancial Corporation, LLC loan transaction is closed, the customer is given a check, representing the loan proceeds, which is drawn on an account at Mellon Bank in Pennsylvania. (*Id.*) Further, when CitiFinancial Corporation, LLC makes a loan to a customer, including Alabama customers, the CitiFinancial Corporation, LLC employee processing the transaction inputs data into a nationwide computer system. (*Id.*)

Moreover, the parties' financing transaction was extensively regulated by the federal government by virtue of its plenary powers under the Commerce Clause. For example, credit agreements such as the one at issue must comply with several federal laws and regulations, including the federal Truth-in-Lending Act and the FTC "holder in due course" rule. Because of

the undisputed federal regulation of the parties' loan transaction, it necessarily follows that the contract "affects" interstate commerce so as to bring into play the FAA.

Finally, the parties expressly agreed that the "funding for [the] Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ et seq." (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) Accordingly, there is no doubt that the transaction involved interstate commerce.

On November 16, 2006, Stokes filed the Underlying Action against CitiFinancial, Inc. and an employee, Glenda Duncan, in the Circuit Court of Lee County, Alabama. (*See* Complaint, attached as Ex. A.) Stokes' claims are based upon alleged injuries resulting from CitiFinancial's alleged publication of and representation to the credit bureau of false and defamatory statements concerning Stokes' loan with CitiFinancial. (*Id.*) Stokes also seeks damages based upon the alleged harassment of Stokes by way of telephone calls and correspondence concerning her loan with CitiFinancial. (*Id.*) Stokes sets forth claims of defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon the alleged misrepresentation, improper credit reporting and collection activities associated with her loan. (*Id.*) Based upon the foregoing claims, Stokes seeks an unlimited amount of compensatory and punitive damages, as well as attorney fees and costs.

The parties' Arbitration Agreement clearly covers the claims that Stokes asserts in the Underlying Action. Under the parties' Arbitration Agreement, Stokes agreed to arbitrate the claims she asserts, not only against CitiFinancial Corporation, LLC, but also against its "past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, [and] successors." (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) CitiFinancial, Inc. is a

corporate affiliate of CitiFinancial Corporation, LLC, and was a corporate affiliate of CitiFinancial Corporation, LLC (i) at the time Stokes entered into the loan agreement with CitiFinancial Corporation, LLC on March 10, 2003; and (ii) at the time of the alleged wrongdoing (which forms the basis of Stokes' complaint in this matter) was allegedly committed by CitiFinancial, Inc. (*See* Baer Aff., Ex. B.)  Stokes' claims in the Underlying Action against CitiFinancial are based upon alleged misrepresentation, improper credit reporting and collection activities made by CitiFinancial in association with Stokes loan - i.e., claims regarding "[a]ny act . . by . . . Us," "[f]raud or misrepresentation," as well as regarding "[a]ny dispute about . . . collecting, or enforcing a Credit Transaction" -- which are specifically encompassed by the parties' arbitration agreement.  Accordingly, there is no doubt that the claims Stokes asserts in the Underlying Action are encompassed in the scope of the March 10, 2003 arbitration agreement.

Because Stokes agreed to arbitrate her claims against CitiFinancial Corporation, LLC and its affiliates -- including Plaintiff CitiFinancial, Inc. -- CitiFinancial requests that this Court order Stokes to arbitrate the claims filed in the Underlying Action against CitiFinancial, pursuant to the parties' arbitration agreement.

## II.   ARGUMENT

### A.   This Court Has Diversity Jurisdiction Pursuant To 28 U.S.C. § 1332.

#### 1.   There is Complete Diversity of Citizenship.

CitiFinancial, Inc. is a Maryland corporation with its principal place of business also located in the State of Maryland.  Therefore, Plaintiff is a resident of the State of Maryland.  28 U.S.C. § 1332(c)(1). Brooka Stokes is a resident citizen of the State of Alabama.  Thus, there is complete diversity of citizenship between all parties.  28 U.S.C. § 1332(a), (c).

Case 3:07-cv-00055-WHA-WC   Document 16   Filed 03/09/2007   Page 8 of 17

### 2. The Amount in Controversy is Met.

Because Stokes seeks an unspecified amount of damages, CitiFinancial is only required to show that "the amount in controversy more likely than not exceeds the jurisdictional requirement." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996.) CitiFinancial has clearly satisfied this requirement in its First Amended Petition to Compel Arbitration by citing an abundance of Alabama decisions involving similar claims wherein plaintiffs were awarded damages in excess of $75,000. Federal courts in Alabama adjudicating similar claims have repeatedly acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. *See Owens v. Life Ins. Co. of Georgia*, 289 F. Supp. 2d 1319 (M.D. Ala. 2003) (after careful review of the cases cited by the defendant, the Court concluded that said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); *Fowler v. Provident Life and Accident Ins. Co.,* 256 F. Supp. 2d 1243, 1249 (N.D. Ala. 2003) (same); *Bullock v. United Ben. Ins. Co.*, 165 F. Supp. 2d 1255, 1259 (M.D. Ala. 2001) (same). Therefore, numerous decisions and jury verdicts cited by CitiFinancial in its First Amended Petition to Compel Arbitration are clearly sufficient for this Court to establish that the amount in controversy is satisfied in this matter. Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

### B. CitiFinancial Is Entitled To Summary Judgment On Its First Amended Petition To Compel Stokes' Claims To Arbitration.

#### 1. Arbitration Agreements are Presumptively Valid Under Federal Law.

The FAA establishes that an arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix Cos. v. Dobson*, 513

1548353                                   8

U.S. 265, 270 (1995). Through its passage of the FAA, Congress placed arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)).

"[G]eneralized attacks on arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989), have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Id.* at 481. Instead, Congress, through its passage of the FAA, and the Supreme Court, through its interpretation of the Act, have together created a strong federal policy favoring the enforcement of arbitration agreements. Indeed, these policies are so strong that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). It is against this backdrop of the strong federal policy of encouraging arbitration that the Court must evaluate the merits of CitiFinancial's First Amended Petition to Compel Arbitration.

        **2.    All Of The Prerequisites Under The FAA For Enforcement Of Arbitration Agreements Are Satisfied In This Matter.**

An arbitration agreement is specifically enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2. Each of these elements is clearly satisfied in this case.

### a.  There is a written agreement to arbitrate.

As set forth above, it is without question that Stokes entered into a written arbitration agreement in connection with the March 10, 2003 loan. (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) Thus, the first prerequisite to enforcement of the parties' Arbitration Agreement is undoubtedly satisfied here.

### b.  The parties' transaction involved and/or affected interstate commerce.

Interstate commerce is clearly affected by the parties' transaction in this case. Indeed, it is now beyond dispute that the delivery, transfer, or movement of goods, services, or other articles of commerce "across state lines has long been recognized as a form of 'commerce.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 520 U.S. 564, 573 (1997). *See also*, *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 36 (1980); *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 194, 6 L.Ed.23, 69 (1824). This is particularly true where it is money that is the "article" delivered, transferred, or moved across state lines. *See, e.g., United States v. Owens,* 159 F.3d 221, 226 (6th Cir. 1998); *Staples v. Money Tree, Inc.,* 936 F. Supp. 856, 858 (M.D. Ala. 1996). *See generally, Ford Motor Co. v. Milhollin,* 444 U.S. 555, 559-60 (1980) (discussing "commerce in credit" in connection with the federal Truth-in-Lending Act).

The FAA provides, in pertinent part, that:

> A written provision in maritime transaction or a contract <u>evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). The term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and

"encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied Bruce Terminix Co.*, 513 U.S. 265, 273 (1995)). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal court.'" *Citizens Bank*, 539 U.S. at 56-57 (citing *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

Furthermore, "commerce" under the FAA is not limited to interstate shipment of goods, but rather includes all contracts relating to interstate commerce, such as loan agreements where "the money-raising activity took place in another state." *Mesa Operating Ltd. P'ship v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238, 243 (5th Cir. 1986). *Accord, Stiles v. Home Cable Concepts, Inc.,* 994 F. Supp. 1410, 1412-13, 1417 (M.D. Ala. 1998); *Roberson v. Money Tree of Alabama, Inc.,* 954 F. Supp. 1519, 1523 & n.4 (M.D. Ala. 1997); *Masthead MAC Drilling Corp. v. Fleck,* 549 F. Supp. 854, 855 (S.D. N.Y. 1982); *Thompson v. Skipper Real Estate Co.,* 729 So. 2d 287, 290 (Ala. 1999); *Green Tree Financial Corp. v. Lewis,* 813 So. 2d 820 (Ala. 2001).

Given this standard, the parties' credit transaction unquestionably involved and/or affected interstate commerce. CitiFinancial Corporation, LLC is a Delaware limited liability company and is in the business of making consumer loans. (S*ee* Baer Aff., Ex. B.) All of CitiFinancial Corporation, LLC's loan operations necessarily involve interstate commerce. (*Id*.) For example, CitiFinancial Corporation, LLC funds its loans made in Alabama, including Stokes' loan, with capital sources from outside the State of Alabama. (*Id*.) When a CitiFinancial Corporation, LLC loan transaction is closed, the customer is given a check, representing the loan

proceeds, which is drawn on an account at Mellon Bank in Pennsylvania. (*Id.*) Further, when CitiFinancial Corporation, LLC makes a loan to a customer, including Alabama customers, the CitiFinancial Corporation, LLC employee processing the transaction inputs data into a nationwide computer system. (*Id.*) Accordingly, Stokes' credit transaction clearly involved and/or affected interstate commerce, and the FAA's second prerequisite for the enforcement of the parties' Arbitration Agreement is satisfied.

Moreover, the parties' financing transaction was extensively regulated by the federal government by virtue of its plenary powers under the Commerce Clause. For example, credit agreements such as the one at issue must comply with several federal laws and regulations, including the federal Truth-in-Lending Act and the FTC "holder in due course" rule, both of which have as their genesis the Commerce Clause.[3] Since "[t]he financing transaction, itself, must comply with federal laws and regulations including the Truth-in-Lending Act . . . a nexus between the arbitration agreement in this case and interstate commerce [exists]." *First Family Fin. Serv., Inc. v. Fairley*, 173 F. Supp. 2d 565, 573 (S.D. Miss. 2001). Because of the undisputed federal regulation of the parties' loan transaction, it necessarily follows that the contract "affects" interstate commerce so as to bring into play the FAA.

Finally, when a contract expressly provides that the transaction involves interstate commerce within the meaning of the FAA, a court <u>will and must enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract</u>. *See Staples v. The Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996) (emphasis added). Here, the parties expressly agreed that the "funding for [the] Credit Transaction will come in whole or in part

---

[3] *See Mourning v. Family Publ'n Serv.*, 411 U.S. 356, 377 (1973) (the power to enact the Truth-in-Lending Act was granted to Congress under the Commerce Clause); *FTC v. P. Lorillard Co.*, 283 F. 999, 1002-03 (S.D.N.Y. 1922), *aff'd*, 264 U.S. 298 (1924) (the FTC's power to enact rules and regulations derives from Congress's power under the Commerce Clause).

from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§ et seq." (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) Accordingly, there is no doubt that the transaction involved interstate commerce and, thus, the second prerequisite to enforcement of the parties' Arbitration Agreement is clearly met.

### c.  The broad scope of the parties' arbitration agreement encompasses the claims asserted by Stokes.

Finally, the parties' Arbitration Agreement is unquestionably broad enough in scope to encompass the claims in the Underlying Action. When determining the scope of an arbitration provision, the Court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provisions. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2nd Cir. 1987). Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)). Furthermore, in order to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance. *United Steelworkers,* 363 U.S. at 584-85; *see also*, *H.L. Fuller Constr. Co. v. Indus. Dev. Bd.,* 590 So. 2d 218, 222 (Ala. 1991).

As previously noted, the parties' Arbitration Agreement is unquestionably broad enough in scope to encompass the claims and allegations in the Underlying Action. In pertinent part, the parties' Arbitration Agreement provides that:

> "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:
>
> - The Note, this Agreement, or the enforceability, or the arbitrability of any Claim pursuant to this Agreement, including but not limited to the scope of this Agreement and any defenses to enforcement of the Note or this Agreement;
> - Any Credit Transaction;
> - Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
> - Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
> - <u>Any act or omission by any of Us</u>;
> - <u>Fraud or misrepresentation, including claims for failing to disclose material facts</u>;
> - Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
> - Any party's execution of this Agreement and/or willingness to be bound by its terms and provisions; or
> - <u>Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction</u>.

(*See* Arbitration Agreement, attached as Ex. 1 to Ex. B) (emphasis added).

The parties' Arbitration Agreement clearly covers the claims that Stokes asserts in the Underlying Action. The parties' Arbitration Agreement encompasses claims in connection with any past, present, or future loan transaction with CitiFinancial Corporation, LLC or any of its affiliates. The Arbitration Agreement defines "Credit Transaction as "any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You." (*See* Arbitration Agreement, attached as Ex. 1 to Ex. B.) It defines "Us" as the Lender (CitiFinancial

Corporation, LLC) and "its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, [and] successors." (*Id.*)  It provides as specific examples of claims that it encompasses, among other things, any case, controversy, dispute, tort, disagreement, lawsuit, or claim between them, including, but not limited to (1) any credit transaction; (2) any act or omission by CitiFinancial; (3) fraud or misrepresentation; and (4) any dispute about closing, servicing, collecting, or enforcing a credit transaction.  (*Id.*)

Significantly, Stokes asserts claims against one of CitiFinancial Corporation, LLC's affiliates -- CitiFinancial, Inc. -- for CitiFinancial, Inc.'s alleged conduct relating to her loan with CitiFinancial.  Stokes' claims in the Underlying Action are for defamation, fraud, negligent misrepresentation and intentional infliction of emotional distress based upon alleged misrepresentation, improper credit reporting and collection activities associated with Stokes' loan - i.e., claims regarding "[a]ny act . . by . . . Us," "[f]raud or misrepresentation," as well as regarding "[a]ny dispute about . . . collecting, or enforcing a Credit Transaction" -- which are specifically encompassed by the parties' arbitration agreement.  As such, there is no doubt that the claims Stokes asserts in the Underlying Action are encompassed in the scope of the March 10, 2003 arbitration agreement.  Clearly, Stokes cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc.*, 475 U.S. at 650.  Accordingly, all of the prerequisites under the FAA for enforcement of arbitration agreements are satisfied in this case.

### III.   CONCLUSION

For the foregoing reasons, CitiFinancial respectfully requests that the Court grant its Motion for Summary Judgment and enter an Order, pursuant to Section 4 of the FAA, compelling arbitration of Stokes' claims in the Underlying Action against CitiFinancial, in accordance with the parties' arbitration agreement.  CitiFinancial further requests that, pursuant

to Section 3 of the FAA and 28 U.S.C. § 2283, the Court enter an Order enjoining Stokes from prosecuting all claims against CitiFinancial in the Underlying Action, to protect and effectuate this Court's judgment.  In addition, CitiFinancial requests that the Court enter an Order staying all litigation of the Underlying Action, pursuant to 9 U.S.C. § 3 and 28 U.S.C. § 1651(a), pending the arbitration of Stokes' claims.

Dated this the 9th day of March, 2007.

Respectfully submitted,

s/ Alan D. Leeth
Reid S. Manley (MAN039)
Alan D. Leeth (LEE038)

Attorneys for Plaintiff
CITIFINANCIAL, INC.

OF COUNSEL:

BURR & FORMAN LLP
3100 Wachovia Tower
420 North 20th Street
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 9th day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all properly registered parties and to the extent they are not registered with the Court's ECF system, they have been served by directing same to their office addresses via first-class, United States mail, postage prepaid:

Hon. James T. Gullage
Jeffrey G. Tickal
GULLAGE & TICKAL, LLP
511 Geneva Street
Opelika, AL 36801
Tel.: (334) 737-3733

          s/ Alan D. Leeth
          OF COUNSEL